**Fill in this information to identify the case:**

Debtor Name Stephen Todd Walker

United States Bankruptcy Court for the: Eastern District of Pennsylvania

Case number: 20-13557 (ELF)

☐ Check if this is an amended filing

Official Form 425A

# Plan of Reorganization for Small Business Under Chapter 11

02/20

**Stephen Todd Walker's Plan of Reorganization, Dated November 25, 2020 (the "Plan")**

## Background for Cases Filed Under Subchapter V

### A. Description and History of the Debtor

Stephen Todd Walker (the "Debtor") is an adult individual who has been a financial advisor since 1993. In March of 2001, the Debtor became employed by Morgan Stanley, which became Morgan Stanley Smith Barney, LLC in 2009 ("Morgan Stanley"). During his tenure there, the Debtor was one of Morgan Stanley's most successful executives. Indeed, out of approximately 24,000 financial advisors, the Debtor was ranked in the Top 150. When the Morgan Stanley predecessor entity merged with Smith Barney, Morgan Stanley gave the Debtor a "Retention Bonus" to remain with the firm. Subsequently, the Debtor expressed some concern over certain products that Morgan Stanley was selling, which ultimately led to Morgan Stanley terminating the Debtor. This resulted in the Debtor bringing what ultimately became an -eight-year arbitration proceeding before the Financial Industry Regulatory Authority, at great expense to the Debtor.

Unfortunately for the Debtor, while the Debtor was awarded a recovery on his affirmative claims against Morgan Stanley, that recovery was eclipsed by a larger award granted to Morgan Stanley on account of Morgan Stanley's counterclaims for the "Retention Bonus" to the Debtor that became unforgiveable when the Debtor's employment was terminated.

Morgan Stanley confirmed that award as a judgment in the United States District Court for the Eastern District of Pennsylvania and although a settlement was initially reached by the parties, the Debtor missed a payment, which resulted in a breach and thereby enabled Morgan Stanley to enforce the judgment. Morgan Stanley's judgment, which also was transferred into Montgomery County Court of Common Pleas, acts as a judicial lien against the Debtor's real estate at 611 Rose Lane, Bryn Mawr, Pennsylvania (the "Bryn Mawr Property") and 1150 Youngsford Road, Gladwyne, Pennsylvania (the "Gladwyne Property").

In addition to the aforementioned Morgan Stanley matter, the Debtor incurred significant costs associated with other litigation, which magnified and exacerbated the Debtor's financial situation. For example, since August of 2019, the Debtor has been embroiled in a contentious domestic relations case with his spouse in the Montgomery County Court of Common Pleas. In addition, the Debtor is defending and pursuing malpractice claims in an action in Philadelphia County Court of Common Pleas against the lawyers and law firm that represented him in the Morgan Stanley matter. And finally, the Debtor is defending and pursuing claims against his spouse's parents in Montgomery County Court of Common Pleas.

As a result of all of the above, the Debtor filed the within chapter 11 bankruptcy case on September 1, 2020. The Debtor is a "small business" as defined in the Bankruptcy Code and has elected to proceed under Subchapter V, which, as more fully detailed below, allows the Debtor to reorganize by devoting all of his disposable income to the payment of creditors for a specified period of time.

## B. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors who do not accept the Plan will receive at least as much under the Plan as such claim holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as Exhibit "A". As set forth in the liquidation analysis, the total amount distributable to creditors, before paying the costs associated with liquidating those assets, is $13,729.

It should be noted that eight of the assets identified in the liquidation analysis have an "Unknown" value. With respect to the first five assets with an "Unknown" value, they are old investments in funds that cannot be quantified, but nevertheless they are believed by the Debtor to have no or nominal value. Accordingly, those assets, even if liquidated, are believed by the Debtor to have no or an inconsequential impact on the liquidation analysis.

With respect to the asset identified as "Local Tax: possible refund from City of Philadelphia," this asset too is not yet quantifiable, but, even once liquidated, is not expected to have any meaningful impact on the liquidation analysis.

Finally, the two remaining assets with an "Unknown" value are claims in litigation, which by their very nature are unliquidated and, until liquidated, are speculative in value. The Debtor has not yet decided whether the costs associated with pursuing those claims is warranted, but, as more fully set forth below, the Debtor proposes to devote any and all recoveries, after payment of costs and expenses associated with pursuing those claims, to payments under this Plan. Therefore, creditors will get the same benefit therefrom under the Plan just as they would in a liquidation.

## C. Ability to make future plan payments and operate without further reorganization

The Plan Proponent must also show that he will have enough cash over the life of the Plan to make the required Plan payments and service his post-petition expenses.

The Plan Proponent has provided projected financial information as Exhibit "B", which consist of a projected three-year cash flow, along with a breakdown of the Debtor's customary household expenses. The cash flow projections reflect that the Debtor earns income from his present employer two ways.

First, the Debtor receives "loans" pursuant to the Schedule attached as Exhibit "C" (the "Employer Loans"). The advances from the Employer Loans are initially treated as loans by the employer to the Debtor until they become forgiven by the employer based upon the latter to occur of the Debtor achieving gross production of $7,500,000 or remaining with the employer for 5 years. To the extent that the Employer Loans are forgiven, they are then treated as ordinary income to the Debtor. Because the Debtor will be taxed on the Employer Loans once they become ordinary income, the Debtor's plan provides for the creation of a tax escrow equal to 35% of the face amount of the loans (the "Tax Escrow Account"), which is consistent with the Debtor's current withholdings.  The Tax Escrow Account will consist of a separate account used for the sole purpose of first paying income taxes owing by the Debtor once assessed against the Debtor and second to repay the employer on account of its administrative claim if and to the extent that the Debtor has an obligation to repay any Employer Loans that were not forgiven by the employer. To be clear, in the event that any portion of the Employer Loans becomes owing, the funds in the Tax Escrow Account will be used first to pay any income tax owing or to become owing by the Debtor.

Second, the Debtor receives fee income derivative of the fees charged on account of services provided to his client. The Debtor's projected fee income is reflected on a gross basis; accordingly, the Debtor has deducted tax withholdings at a rate of 35% consistent with the Debtor's most recent paychecks, along with insurance deductions and domestic relations deductions (the "Net Fee Income").

In all events, the Employer Loans and Net Fee Income will be first used to (1) pay all of the Debtor's monthly expenses; (2) fund the Tax Escrow Account; (3) fund a reserve equal to the Debtor's expenses for the following month; and (4) pay professional fees and costs associated with the pending domestic relations and post-confirmation relating to this case, all as set forth in Exhibit B, with all remaining funds paid to the Subchapter V Trustee to fund distributions in accordance with this Plan (the "Disposable Income"), which the Debtor believes is consistent with the defined statutory projected disposable income (as defined by § 1191(d) of the Bankruptcy Code (the "Code")). Consistent with the period described in § 1191(c)(2), the Debtor projects paying his

Disposable Income to fund a plan for a period of three years in the aggregate amount of $445,000.00.

The final Plan payment is expected to be paid on the third anniversary after the "Effective Date," which is defined as the first day of the first month following the date that the Order confirming this Plan becomes final and non- appealable.

***All of the income figures in the cash flow are projections to the best of the Debtor's ability, but it must be stressed that none of the Debtor's income is guaranteed, but, in one respect or another, is performance- based and can fluctuate based upon factors outside the Debtor's control, including the effects that the global pandemic will have on investments, the general volatility of market conditions and other factors.***

Finally, the domestic relations deduction to the Debtor's income is consistent with what is in place as of the filing of this Plan, but it can be adjusted by the presiding court.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

**Article 1: Summary**

This Plan under chapter 11 of the Code proposes to pay creditors of the Debtor from the disposable income remaining after the Debtor's Employer Loans and Net Fee Income pay for certain expenses and obligations as more fully set forth in this Plan.

This Plan provides for:

| | |
|---|---|
| 1 | class of priority claims; |
| 6 | classes of secured claims; |
| 1 | class of non-priority unsecured claims; and |
| 1 | class of interests that the Debtor has in property of the estate. |

This Plan also provides for the payment of administrative and priority claims.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 7.5 cents on the dollar based upon the following assumptions:

$445,000 Disposable Income
($23,000) Domestic Support Priority Claim
($75,000) Debtor's counsel Administrative Expense Claim
($15,000) Subchapter V Administrative Expense Claim
($30,000) Priority Tax Claim
($78,000) Wells Fargo prepetition arrearages
($6,000) PNC prepetition arrearages (two mortgages

**$218,000 Available to distribute to unsecured creditors with a class of approximately $2,900,000 in claims.**

**All creditors should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. Your rights may be affected. You should read these paper carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

**Article 2: Classification of Claims and Interests**

2.01 **Class 1** .............................. Class 1 consists of all allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2) and priority tax claims under § 507(a)(8)).

Class 1A shall consist of the allowed domestic support claim of Dorothy Schade Walker pursuant to § 507(a)(1) in the nature of prepetition child support.

2.02 **Class 2** .............................. Class 2 consists of the following claims, to the extent allowed as a secured claim under § 506 of the Code:

Class 2A shall consist of the allowed secured claim of Wells Fargo Bank, N.A., which has a valid and properly recorded first priority mortgage lien on the Bryn Mawr Property.

Class 2B shall consist of the allowed secured claim of PNC Bank, N.A., which has a valid and properly recorded second priority mortgage lien on the Bryn Mawr Property.

Class 2C shall consist of the allowed secured claim of PNC Bank, N.A., which has a valid and properly recorded third priority mortgage lien on the Bryn Mawr Property.

Class 2D shall consist of the allowed secured claim of PHH Mortgage Services/HSBC Bank USA, National Association Trustee for Sequoai Mortgage Trust 2007-2, which has a valid and properly recorded first priority mortgage lien on the Gladwyne Property.

Class 2E shall consist of the allowed secured claim of Rushmore Loan Management Servicing/Goldman Sachs Mortgage Company, which has a valid and properly recorded second priority mortgage lien on the Gladwyne Property.

Class 2F shall consist of the allowed secured claim of Morgan Stanley Smith Barney, LLC, which has a judicial lien on the Gladwyne Property, with a priority subordinate to the liens of the Class 2D and Class 2E creditors.

2.03 **Class 3** ...................................

Class 3 consists of all non-priority unsecured claims allowed under § 502 of the Code, which shall also include the deficiency claim of Morgan Stanley after the sale of the Gladwyne Property.

2.04 **Class 4** ...................................

Class 4 consists of the interests of the Debtor in property of the Estate.

### Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

3.01 **Unclassified claims**

Under section § 1123(a)(1), administrative expense claims and priority tax claims are not in classes.

3.02 **Administrative expense claims**

Administrative expense claims shall consist of the allowed claims of the Debtor's court-employed professionals, along with the Subchapter V Trustee. The Debtor estimates that the aggregate amount of allowed administrative expense claims shall be $90,000. Each holder of an administrative expense claim allowed under § 503 of the Code will be paid pro rata from the Debtor's Disposable Income based upon their claims as allowed by this Court starting on the Effective Date of the Plan and continuing each month until paid in full.

| 3.03 **Priority tax claims** | Each holder of a priority tax claim will be paid each month from the Debtor's disposable income pro rata starting in the first month following payment in full of all Priority Claims and Administrative Expense claims. Priority tax claims will be paid from all of the Debtor's disposable income until paid in full. |
| --- | --- |
| | Holders of priority tax claims consist of the Internal Revenue Service (with a priority claim on account of 2019 taxes in the estimated amount of $30,000 (including interest accrual)), along with a possible claim by the Pennsylvania Department of Revenue. |
| 3.04 **Statutory fees** | Not applicable. |
| 3.05 **Prospective quarterly fees** | Not applicable. |

**Article 4: Treatment of Claims and Interests Under the Plan**

4.01 **Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
| --- | --- | --- |
| Class 1 - Priority claims excluding those in Article 3 | ☐ Impaired<br>☑ Unimpaired | Each holder of a Class 1 Priority Claim will be paid in full, in cash, upon the later of the Effective Date of this Plan, or the date on which such claim is allowed by a final non-appealable order. If there is insufficient funds from the Debtor's Disposable Income to satisfy such claims in full on the Effective Date, Class 1 Priority Creditors shall receive all of the Debtor's Disposable Income for all months subsequent to the Effective Date until their claims are paid in full. |
| Class 2A-F – Secured claims | ☑ Impaired<br>☑ Unimpaired | Class 2A shall consist of the allowed secured claim of Wells Fargo Bank, N.A. ("Wells Fargo"), which is impaired. Wells Fargo has a valid and properly recorded first priority mortgage lien on the Bryn Mawr Property. The Debtor will pay Wells Fargo its regular monthly mortgage payments (along with any applicable escrow) current post-petition. With respect to the prepetition arrearages owed to Wells Fargo in the stated amount of $77,870.88, the arrearage claim shall be paid from the Debtor's Disposable Income in equal monthly installments of $6,489.24 over a 12-month period starting on the Effective Date. |
| | | Class 2B shall consist of the allowed secured claim of PNC Bank, N.A. ("PNC"), which is unimpaired. PNC has a valid and properly recorded second priority mortgage lien on the Debtor's residence located at 611 Rose Lane, Bryn Mawr, PA 19010. The Debtor will pay PNC its regular monthly mortgage payments current post-petition. With respect to the prepetition arrearages owed to PNC, the Debtor shall pay same on the Effective Date. |
| | | Class 2C shall consist of the allowed secured claim of PNC, which is unimpaired. PNC has a valid and properly recorded third priority mortgage lien on the Bryn Mawr Property, which is unimpaired. The Debtor will pay PNC its regular monthly mortgage payments current post-petition. With respect to the prepetition arrearages owed to PNC, the |

Class 2D shall consist of the allowed secured claim of PHH Mortgage Services/HSBC Bank USA, National Association Trustee for Sequoai Mortgage Trust 2007-2 ("PHH"), which is unimpaired. PHH has a valid and properly recorded first priority mortgage lien on the Gladwyne Property. The Debtor will pay PHH in connection with his sale of the foregoing property either pursuant to this confirmed plan or, if sooner, pursuant to § 363.

Class 2E shall consist of the allowed secured claim of Rushmore Loan Management Servicing/Goldman Sachs Mortgage Company ("Rushmore"), which is unimpaired. Rushmore has a valid and properly recorded second priority mortgage lien on the Gladwyne Property. The Debtor will pay Rushmore in connection with his sale of the foregoing property either pursuant to this confirmed plan or, if sooner, pursuant to § 363.

Class 2F shall consist of the allowed secured claim of Morgan Stanley Smith Barney, LLC ("Morgan Stanley"), which is unimpaired. Morgan Stanley has a judicial lien on the Gladwyne Property, with a priority subordinate to the liens of the Class 2D and Class 2E creditors. The Debtor will pay Morgan Stanley to the extent of any equity in his sale of the foregoing property either pursuant to this confirmed plan or, if sooner, pursuant to § 363.

| | | |
|---|---|---|
| Class 3 – Non-priority unsecured creditors | ☑ Impaired<br>☐ Unimpaired | Each holder of a Class 3 Claim will be paid from the Debtor's Disposable Income, in cash, upon the later of the effective date of this Plan, the date on which such claim is allowed by a final non-appealable order or the beginning on the first month after the following Classes/Claims have been paid in full: (1) Class 1; (2) Administrative Expense Claims; (3) Priority Tax Claims; (4) Class 2A arrearage claim; (5) Class 2B arrearage claim; and (6) Class 2C arrearage claim. |
| Class 4 – Debtor's interest in property of the estate. | ☐ Impaired<br>☑ Unimpaired | The Debtor will retain his interests in property of the estate. |

### Article 5: Allowance and Disallowance of Claims

**5.01 Disputed claim**

A *disputed claim* is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either:

(i)   a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

(ii)  no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

**5.02 Delay of distribution on a disputed claim**

No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

**5.03 Settlement of disputed claims**

The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

### Article 6: Provisions for Executory Contracts and Unexpired Leases

| 6.01 **Assumed executory contracts and unexpired leases** | (a) The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the Effective Date: There are no executory contracts or unexpired leases in this case and, thus, subpart (b) is inapplicable to this Plan. |

(b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the Effective Date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 _____ days after the date of the order confirming this Plan.

### Article 7: Means for Implementation of the Plan

The Plan will be implemented as follows:

First, in connection with or prior to Plan confirmation, the Debtor intends to sell the the Gladwyne Property. This will retire the debt owed to PFF, the first mortgage holder, and Rushmore, the second mortgage holder, as well as reduce the amount owing to Morgan Stanley by approximately $700,000. Reducing the Morgan Stanley claim will increase the pro rated return to unsecured creditors because the pool of unsecured debt in Class 3 entitled to distributions will be reduced by the amount paid to Morgan Stanley in connection with the sale of the Gladwyne Property. On a related topic, the Debtor will eliminate the debt service associated with the two aforementioned mortgages by retiring those mortgages, thereby increasing the Disposable Income payable to unsecured creditors pursuant to the Plan.

Second, as more fully set forth on the Debtor's cash flow projections attached as Exhibit B, the Debtor projects generating the aggregate sum of $445,000.00 that will be distributed to creditors on account of their allowed claims in the following statutory order of priority: (1) the domestic relations priority claim of Dorothy Schade Walker; (2) administrative expense claims; (3) priority tax claims; (4) mortgage arrearages on the Bryn Mawr Property and (5) the claims of unsecured creditors. The Debtor anticipates that he will pay his monthly Disposable Income to the Subchapter V Trustee for disbursement consistent with this Plan.

Finally, the Debtor shall have the exclusive right, but shall be under no obligation, to pursue causes of action allowed under applicable law or under the Bankruptcy Code (although the Debtor is not aware of any actions under the Bankruptcy Code). Although the Debtor is not aware of any Bankruptcy are not aware of the existence of any such Causes of Action, if they do exist, the Debtors shall prosecute causes of action diligently so as to conclude such actions as soon as practicable, with the proceeds therefrom being deposited into the Disbursement Account and paid in accordance with this Plan.

From and after the Effective Date, the Reorganized Debtor may, in the ordinary course and without the necessity of any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professional persons thereafter incurred, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

### Article 8: General Provisions

| | |
|---|---|
| 8.01 **Definitions and rules of construction** | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used, but not otherwise defined, in this Plan. |
| 8.02 **Effective date** | The "Effective Date" of this Plan is the first day of the month following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 **Binding effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| [8.06 **Controlling effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Pennsylvania govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| [8.07 **Corporate governance** | Not applicable. |

[8.08 **Retention of Jurisdiction**

The Court shall retain jurisdiction of this Case after the Confirmation Date for the following purposes:

(a)      To take any action with respect to the subordination, allowance, disallowance, validity, perfection, enforcement or avoidance of Claims and liens, including, determination of objections to the allowance of claims and amendments to schedules;

(b)      To classify the Claim of any Claimant and to re-examine Claims which have been allowed for purposes of voting, and to determine such objections as may be filed to Claim;

(c)      To determine any and all disputes arising under or the Plan;

(d)      To determine any and all applications for allowance of compensation and reimbursement of expenses herein;

(e)      To determine any applications for rejection of executory contracts and unexpired leases and to determine the amount of any Claims resulting from the rejection thereof or from the rejection of executory contracts or unexpired leases pursuant to the Plan;

(f)      To determine any and all applications, adversary proceedings and contested and litigated matters pending in the Case as of the Confirmation Date or filed within one hundred eighty days thereafter;

(g)      To hear, determine and enforce any Code created Causes of Action and to authorize prosecution of same in such other courts as may be required by law;

(h)      To modify any provision of the Plan to the full extent permitted by the Code;

(i)      To correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes, intent and effect of the Plan;

(j)      To determine such other matters as may be provided for in the Confirmation Order or as may be authorized under provision of the Code or otherwise deemed appropriate to accomplish the Plan's intent and purpose;

(k)      To grant extensions of any deadline set herein;

(l)      To enforce all discharge provisions under the Plan;

(m)      To enter any order, including injunctions, necessary to enforce the terms of the Plan, and the rights and power of the Debtors under the Code, this Plan and as the Court may deem necessary; and

(n)      To enter a Final Order closing this Case.

**Article 9: Discharge**

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

      (i) imposed by this Plan; or

      (ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

      (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or

      (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

**Article 10: Other Provisions – None**

/s/ Stephen Todd Walker
Stephen Todd Walker

/s/ David B. Smith
David B. Smith, Esquire
SMITH KANE HOLMAN, LLC
112 Moores Road, Suite 300
Malvern, PA 19355
Tel: (610) 407-7217
Fax: (610) 407-7218
dsmith@skhlaw.com
Counsel to the Debtor

# EXHIBIT A

## STEPHEN TODD WALKER
### LIQUIDATION ANALYSIS

| Asset | Value | Lien Amount(s) | Exemption Amount | Equity |
|---|---|---|---|---|
| 611 Rose Lane, Bryn Mawr, PA 19010 | $1,100,000.00 | $471,646.00<br>$136,446.00<br>$581,348.00<br>**$1,189,440.00** | $0 | $0 |
| 1150 Youngsford Road, Gladwyne, PA 19035 | $1,621,634.00 | $547,336.00<br>$1,200,000.00<br>1,200,000.00<br>**$2,077,113.00** | $12,153.70 | $0 |
| 2011 Lexus GX | $14,429.00 | $0 | $4,000.00 | $10,429.00 |
| Various furniture, furnishings and appliances | $12,000.00 | $0 | $12,000.00 | $0 |
| 3 Tvs, 2 computers, phone, laptop | $1,300.00 | $0 | $1,300.00 | $0 |
| 2 sets of golf clubs, bicycle | $500.00 | $0 | $500.00 | $0 |
| Various clothes and clothing | $100.00 | $0 | $100.00 | $0 |
| 1 watch | $5,000.00 | $0 | $1,700.00 | $3,300.00 |
| PNC Bank NA Checking Acct. #0865 | $41.46 | $0 | $41.46 | $0 |
| Republic Bank Checking Acct. #3985 | $40.11 | $0 | $40.11 | $0 |
| First Citizens Community Bank Checking Acct. # 9911 | $153.14 | $0 | $153.14 | $0 |
| Community Bank of DE Checking Acct. #1023 | $615.39 | $0 | $615.39 | $0 |
| PNC Bank Checking Acct. #9594 | $114.09 | $0 | $114.09 | $0 |
| RBC Wealth Management Individual Acct. #3859 | $222.65 | $0 | $222.65 | $0 |
| RBC Wealth Management Joint Acct. #0685 | $59.46 | $0 | $59.46 | $0 |
| Morgan Stanley Capital Partners Funds | Unknown | $0 | $0 | $0 |
| Oppenheimer | Unknown | $0 | $0 | $0 |
| Deutsche Bank/Alex Brown – Special Opportunity Fund, LLC | Unknown | $0 | $0 | $0 |
| Stratosphere, LLC | Unknown | $0 | $0 | $0 |
| Orchid, LLC | $0 | $0 | $0 | $0 |
| Wealth Devil, LLC | $0 | $0 | $1 | $0 |
| Pennstone, LLC | Unknown | $0 | $0 | $0 |

| Asset | Value | Lien Amount(s) | Exemption Amount | Equity |
|---|---|---|---|---|
| Fidelity Brokerage Services IRA | $45.75 | $0 | $45.75 | $0 |
| RBC Wealth Management IRA Acct. #3980 | $201.28 | $0 | $201.28 | $0 |
| The Stephen Todd Walker 2004 Irrevocable Trust | $0 | $0 | $0 | $0 |
| Local Tax: possible refund from City of Philadelphia | Unknown | $0 | $0 | Unknown |
| Unliquidated claim against John Schade for defamation, commercial disparagement and tortious interference with a contract | Unknown | $0 | $0 | Unknown |
| Unliquidated claims against Sidkoff, Pincus & Green, PC and Debra Speyer, Esquire | Unknown | $0 | $0 | Unknown |
| | | | | |
| TOTALS: | $2,756,456.33 | $3,266,553.00 | $33,247.03 | $13,729.00 |

# EXHIBIT B

# Cash Flow 2020-2023

| | 2020 November | 2020 December | Carry Over From Reserve |
|---|---|---|---|
| **Loans & Income** | | | |
| Loans | $100,000.00 | $50,000.00 | |
| Gross Fee Income | $37,000.00 | $25,000.00 | |
| Tax Deductions | $11,950.00 | $8,750.00 | |
| Insurance Deductions | $1,042.88 | $1,042.88 | |
| Domestic Relations Deductions | $6,000.00 | $6,000.00 | |
| Net Fee Income | $17,007.12 | $9,207.12 | |
| | | | |
| Total Loan/Net Income | $117,007.12 | $59,207.12 | |
| | | | |
| **Disbursements** | | | |
| Household expenses | $15,000.00 | $15,000.00 | |
| Income Tax Escrow For Loans | $35,000.00 | $17,500.00 | |
| Reserve - Household Expenses | $0.00 | $0.00 | |
| Domestic Relations Legal | $0.00 | $10,000.00 | |
| | | | |
| Total Disbursements | $50,000.00 | $42,500.00 | |
| | | | |
| Monthly Disposable Income | $67,007.12 | $16,707.12 | |
| | | | |
| Annual Disposable Income | $83,714.24 | | |

| | January | February | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2021 | 2021 | 2021 | 2021 | 2021 | 2021 | 2021 | 2021 | 2021 | 2021 | 2021 | 2021 |
| *(Carry Over From Reserve)* | $83,714 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 |
| **Loans & Income** | | | | | | | | | | | | |
| Loans | $50,000.00 | $50,000.00 | $50,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $100,000.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Gross Fee Income | $31,250.00 | $31,250.00 | $31,250.00 | $31,250.00 | $31,250.00 | $31,250.00 | $31,250.00 | $31,250.00 | $31,250.00 | $31,250.00 | $31,250.00 | $31,250.00 |
| Tax Deductions | $10,937.50 | $10,937.50 | $10,937.50 | $10,937.50 | $10,937.50 | $10,937.50 | $10,937.50 | $10,937.50 | $10,937.50 | $10,937.50 | $10,937.50 | $10,937.50 |
| Insurance Deductions | $1,042.88 | $1,042.88 | $1,042.88 | $1,042.88 | $1,042.88 | $1,042.88 | $1,042.88 | $1,042.88 | $1,042.88 | $1,042.88 | $1,042.88 | $1,042.88 |
| Domestic Relations Deductions | $6,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 |
| Net Fee Income | $13,269.62 | $14,269.62 | $14,269.62 | $14,269.62 | $14,269.62 | $14,269.62 | $14,269.62 | $14,269.62 | $14,269.62 | $14,269.62 | $14,269.62 | $14,269.62 |
| Total Reserve/Loan/Net Income | $146,983.86 | $79,269.62 | $79,269.62 | $29,269.62 | $29,269.62 | $29,269.62 | $29,269.62 | $129,269.62 | $29,269.62 | $29,269.62 | $29,269.62 | $29,269.62 |
| **Disbursements** | | | | | | | | | | | | |
| Household expenses | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 |
| Income Tax Escrow For Loans | $17,500.00 | $17,500.00 | $17,500.00 | $0.00 | $0.00 | $0.00 | $0.00 | $35,000.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Reserve - Household Expenses | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 |
| Bkr/Domestic Relations Legal | $10,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Total Disbursements | $57,500.00 | $52,500.00 | $52,500.00 | $35,000.00 | $35,000.00 | $35,000.00 | $30,000.00 | $65,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 |
| Monthly Disposable Income | $89,483.86 | $26,769.62 | $26,769.62 | -$5,730.38 | -$5,730.38 | -$5,730.38 | -$730.38 | $64,269.62 | -$730.38 | -$730.38 | -$730.38 | -$730.38 |

Annual Disposable Income:   $186,449.68

| | January 2022 | February 2022 | March 2022 | April 2022 | May 2022 | June 2022 | July 2022 | August 2022 | September 2022 | October 2022 | November 2022 | December 2022 | Carry Over From Reserve |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Loans & Income** | | | | | | | | | | | | | |
| Loans | $200,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $15,000.00 |
| Gross Fee Income | $37,500.00 | $37,500.00 | $37,500.00 | $37,500.00 | $37,500.00 | $37,500.00 | $37,500.00 | $37,500.00 | $37,500.00 | $37,500.00 | $37,500.00 | $37,500.00 | |
| Tax Deductions | $13,125.00 | $13,125.00 | $13,125.00 | $13,125.00 | $13,125.00 | $13,125.00 | $13,125.00 | $13,125.00 | $13,125.00 | $13,125.00 | $13,125.00 | $13,125.00 | |
| Insurance Deductions | $1,042.88 | $1,042.88 | $1,042.88 | $1,042.88 | $1,042.88 | $1,042.88 | $1,042.88 | $1,042.88 | $1,042.88 | $1,042.88 | $1,042.88 | $1,042.88 | |
| Domestic Relations Deductions | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | |
| Net Fee Income | $18,332.12 | $18,332.12 | $18,332.12 | $18,332.12 | $18,332.12 | $18,332.12 | $18,332.12 | $18,332.12 | $18,332.12 | $18,332.12 | $18,332.12 | $18,332.12 | |
| Total Reserve/Loan/Net Income | $233,332.12 | $33,332.12 | $33,332.12 | $33,332.12 | $33,332.12 | $33,332.12 | $33,332.12 | $33,332.12 | $33,332.12 | $33,332.12 | $33,332.12 | $33,332.12 | |
| **Disbursements** | | | | | | | | | | | | | |
| Household expenses | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | |
| Income Tax Escrow For Loans | $70,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| Reserve - Household Expenses | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | |
| Bkt./Domestic Relations Legal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| Total Disbursements | $100,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | |
| Monthly Disposable Income | $133,332.12 | $3,332.12 | $3,332.12 | $3,332.12 | $3,332.12 | $3,332.12 | $3,332.12 | $3,332.12 | $3,332.12 | $3,332.12 | $3,332.12 | $3,332.12 | |
| Annual Disposable Income | $169,985.44 | | | | | | | | | | | | |

| | January 2023 | February 2023 | March 2023 | April 2023 | May 2023 | June 2023 | July 2023 | August 2023 | September 2023 | October 2023 | November 2023 | December 2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Loans & Income** | | | | | | | | | | | | Carry Over From Reserve |
| Loans | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 |
| Gross Fee Income | $43,750.00 | $43,750.00 | $43,750.00 | $43,750.00 | $43,750.00 | $43,750.00 | $43,750.00 | $43,750.00 | $43,750.00 | $43,750.00 | $43,750.00 | $43,750.00 |
| Tax Deductions | $15,312.50 | $15,312.50 | $15,312.50 | $15,312.50 | $15,312.50 | $15,312.50 | $15,312.50 | $15,312.50 | $15,312.50 | $15,312.50 | $15,312.50 | $15,312.50 |
| Insurance Deductions | $1,042.88 | $1,042.88 | $1,042.88 | $1,042.88 | $1,042.88 | $1,042.88 | $1,042.88 | $1,042.88 | $1,042.88 | $1,042.88 | $1,042.88 | $1,042.88 |
| Domestic Relations Deductions | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 |
| Net Fee Income | $22,394.62 | $22,394.62 | $22,394.62 | $22,394.62 | $22,394.62 | $22,394.62 | $22,394.62 | $22,394.62 | $22,394.62 | $22,394.62 | $22,394.62 | $22,394.62 |
| Total Reserve/Loan/Net Income | $37,394.62 | $37,394.62 | $37,394.62 | $37,394.62 | $37,394.62 | $37,394.62 | $37,394.62 | $37,394.62 | $37,394.62 | $37,394.62 | $37,394.62 | $37,394.62 |
| **Disbursements** | | | | | | | | | | | | |
| Household expenses | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 |
| Income Tax Escrow for Loans | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Reserve - Household Expenses | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 |
| Bu/Domestic Relations Legal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Total Disbursements | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 |
| Monthly Disposable Income | $7,394.62 | $7,394.62 | $7,394.62 | $7,394.62 | $7,394.62 | $7,394.62 | $7,394.62 | $7,394.62 | $7,394.62 | $7,394.62 | $7,394.62 | $7,394.62 |

Annual Disposable Income:  $88,735.44

<u>Monthly Household Expenses</u>

| | |
|---|---:|
| Wells Fargo Mortgage (and tax escrow) | 7,116 |
| PNC Mortgage | 1,688 |
| PNC Mortgage | 1,264 |
| Chubb Insurance | 230 |
| Chubb Insurance | 644 |
| Travelers Insurance | 568 |
| Auto Expense | 500 |
| Aqua | 400 |
| Xfinity | 250 |
| AT&T | 250 |
| Verizon | 30 |
| PECO | 500 |
| LM Sewer | 60 |
| Excel | 400 |
| Chet Majewski | 100 |
| Living Expenses | 600 |
| | |
| Total | 14,601 |

# EXHIBIT C

## Schedule of Advances

Advances. Aegis will advance the funds in accordance with the Amended and Restated Promissory Note (the "Note") to Borrower as follows: (a) $100,000.00 upon obtaining court approval of the Note and related agreements, execution of the Note, and amended term sheet; and (b) the remaining $700,000.00 (the "Remaining Advances") shall occur pursuant to the Advance Formula set forth below, which sets forth the amount of advance based upon Borrower causing the specified amount of cumulative net assets to be placed under management maintained at Aegis and remaining at Aegis in the specified time periods set forth in (1) through (7) below (the "Advance Criteria"), which time periods are calculated from the effective date of Borrower's registration with Aegis, July 14, 2020 (the "Effective Date"):

    (a)    Advance Formula.

| Cumulative Net Asset Amount | Advance Amount | Time Period From Effective Date |
|---|---|---|
| (1) $30,000,000.00 | $50,000.00 | Within 11 months |
| (2) $40,000,000.00 | $50,000.00 | Within 11 months |
| (3) $50,000,000.00 | $50,000.00 | Within 11 months |
| (4) $60,000,000.00 | $50,000.00 | Within 11 months |
| (5) $100,000,000.00 | $100,000.00 | Within 13 months |
| (6) $200,000,000.00 | $200,000.00 | Within 19 months |
| (7) $300,000,000.00 | $200,000.00 | Within 25 months |

    (b) Treatment of Any Missed Advances. Notwithstanding the above advance formula, if Borrower does not become entitled to any of the above advances because Borrower did not satisfy the applicable and corresponding Advance Criteria (a "Missed Advance"), Borrower shall be entitled to recover any such Missed Advance as follows (a "Recovered Advance"):

        (i)    If Borrower did not receive any of advance numbers (1) through (4) because he failed to meet the applicable Advance Criteria, but Borrower meets the Advance Criteria for advance number (5), Borrower shall be entitled to any applicable Missed Advance for advance numbers (1) through (4) if achieved within thirteen (13) months.

        (ii)    If Borrower did not receive advance number (5) because he failed to meet the applicable Advance Criteria, but Borrower meets the Advance Criteria for advance number (6), Borrower shall be entitled to the Missed Advance for advance number (5) if achieved within nineteen (19) months.

        (iii)    If Borrower did not receive advance number (6) because he failed to meet the applicable Advance Criteria, but Borrower meets the Advance Criteria for advance number (7), Borrower shall be entitled to the Missed Advance for advance number (6) if achieved within twenty five (25) months.

Aegis shall have no obligation to make any loan advance that is a Missed Advance that does not become a Recovered Advance, and the face principal amount of the Amended and Restated Promissory Note shall be deemed reduced accordingly.

1

(c) <u>Timing of Advances</u>.  All advances hereunder shall be made no later than five (5) business days after Borrower satisfies any applicable Advance Criteria; provided, however, that advances shall occur no more frequently than every thirty (30) calendar days.  Furthermore, all advances are subject to the additional condition that Borrower maintain all applicable securities industry registrations with Aegis at such time as payment is due.