IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : CHAPTER 11 |
| STEPHEN TODD WALKER | : |
| | : BANKRUPTCY NO. 20-13557-ELF |
| Debtor | : |
| STEPHEN TODD WALKER | : |
| Movant/Plan Proponent | : |
| | : Hearing Date and Time: January 13, 2021 at 11:00 a.m. |
| v. | : |
| COMMONWEALTH OF PENNSYLVANIA | : Related to Doc. 72 |
| DEPARTMENT OF REVENUE | : |
| Creditor/Respondent | : |

OBJECTION TO DEBTOR'S PLAN OF REORGANIZATION FOR SMALL BUSINESS
UNDER CHAPTER 11 (DATED NOVEMBER 25, 2020)

AND NOW comes the Commonwealth of Pennsylvania, Department of Revenue, ("Department") by and through its Attorney, Christos A. Katsaounis, Senior Counsel, and pursuant to Federal Rules of Bankruptcy Procedure 3018 and 3020(b) and 11 U.S.C §§ 1128(b) and 1109(b) objects to the Debtor's Plan of Reorganization for Small Business under Chapter 11 ("Plan" or "proposed Plan") as follows:

**Department's Proofs of Claim.**

1. On November 25, 2020, the Department filed its Amended Pre-Petition Proof of Claim against the Debtor for the amount of $8,509.11: **Secured Claim** ($8,312.03) for Personal Income Tax ("PIT") for the 2016 and 2017 tax years. **Unsecured Nonpriority Claim** ($188.33) for PIT for the 2018 tax year. **Unsecured Nonpriority Claim** ($8.75) for PIT for the 2018 tax year.

To date, the Department has not filed an Administrative Claim.

**Secured Claim Not Provided For.**

2. The Department's tax lien was filed on November 22, 2019 because of the Debtor's failure to pay his PIT liabilities. The Department's tax lien encumbers and attaches to all the Debtor's assets (i.e., real and personal property).[1]

Further, 11 U.S.C. § 522(c)(2)(B) provides that state and federal tax liens attach to exempt property. See Bourque v. United States (In re Bourque), 123 F.3d 705, 706 n. 2 (2d Cir. 1997), citing 11 U.S.C. § 522(c)(2)(B) "'[A] tax lien, notice of which is properly filed,' is effective against exempt property ... and may not be avoided." See also Tudisco v. United States (In re Tudisco), 183 F.3d 133, 139 (2d Cir. 1999); and Jeffrey v. United States (In re Jeffrey), 261 B.R. 396, 401 (Bankr.W.D.Pa. 2001).

3. The Plan does not provide for the payment of the Department's Secured Claim. The Plan should provide for the payment of the Department's Secured Claim along with accrued interest in the amount of three percent (3%). The Plan should also provide that the Department shall retain its tax lien until such time as the claim is paid in full.

4. A review of SCHEDULE A/B: PROPERTY, SCHEDULE C: THE PROPERTY YOU CLAIM AS EXEMPT, SCHEDULE D: CREDITORS WHO HAVE CLAIMS SECURED BY PROPERTY, and the Claims Register shows that the Debtor has sufficient assets to cover the Department's Secured Claim. If the Department's Secured Claim is not covered or not covered in its entirety by the Debtor's assets, the Department is willing to work with the Debtor to reclassify or bifurcate its Secured Claim as necessary to correctly reclassify part or all of its Secured Claim.

5. 11 U.S.C. § 1129(a)(9)(D) provides that

---

[1] The statute, 72 P.S. § 7345(a), provides that the tax lien is against "real and personal property."

> (9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that--
>
> (D) with respect to a secured claim which would otherwise meet the description of an unsecured claim of a governmental unit under section 507(a)(8), but for the secured status of that claim, the holder of that claim will receive on account of that claim, cash payments, in the same manner and over the same period, as prescribed in subparagraph (C).

Section 1129(a)(9)(D) requires a plan to treat secured tax claims in the same manner as unsecured tax claim. 7 <u>Collier on Bankruptcy</u> ¶ 1129.02[9][c][ii] and 1129.02[9][d], at 1129-46 and 1129-50 (Richard Levin & Henry J. Sommer eds. 16th ed. 2017). Hence, these provisions provide that a Secured Claim must be paid in <u>cash</u> with interest within five years from the date the petition was filed.

6. The Plan is not confirmable as the Plan is not fair and equitable. <u>See</u> 11 U.S.C. § 1191(b) and (c). The minimal requirements of 11 U.S.C. § 1129(b)(2) require that the secured claimant (i) must retain its lien(s) and get paid the full amount of its claim in deferred cash payments the present value of which payments must equal the value of the collateral it holds, (ii) must be paid from the sale of its collateral, or (iii) must realize the indubitable equivalent of its claim. <u>In re Simons</u>, 113 B.R. 942, 946 (Bankr.W.D.Tex. 1990).

The Plan should provide for the full payment of the Department's Secured Claim and that the Department's PIT lien is retained until such time as its Secured Claim is paid in full.

**<u>Unsecured Priority Claim Not Adequately Provided For.</u>**

7. Each holder of a priority tax claim is to be paid consistent with 11 U.S.C. § 1129(a)(9)(C). Section 1129(a)(9)(C) provides that the Department's Unsecured Priority Claim must be paid in cash of the total value, with interest, Section 1129(a)(9)(C)(i), and within five years from the date the petition was filed, not the effective date, Section 1129(a)(9)(C)(ii). <u>See also</u>, <u>In re Lawrence R. Jankins</u>, 184 B.R, 488, 492-493 (Bankr.E.D. Va. 1995); <u>In re Hathaway</u>

Coffeehouse, Inc., 24 B.R. 534, 535 (S.D. Ohio 1982); and In re Burgess Wholesale Mfg. Opticians, Inc., 721 F.2d 1146, 1147 (7th Cir. 1983).  Payments must be made on a recurrent basis in order to satisfy the relevant statutory requirements.  In re: Jerath Hospitality, LLC, 484 B.R. 245, 247 (Bankr.S.D.Ga. 2012).

    8.  The Plan (Article 3.03) provides the payment of the Department's Unsecured Priority Claim:

> Each holder of a priority tax claim will be paid each month from the Debtor's disposable income pro rata starting in the first month following payment in full of all Priority Claims and Administrative Expense claims.  Priority tax claims will be paid from all the Debtor's disposable income until paid in full.

This provision is contrary to law and should be removed.  The Debtor cannot treat other priority claims more favorably than tax claims.  The Plan also fails to specify or detail how priority tax claims will be paid (i.e., amount per month and how long the payments will be made).  Priority tax creditors are entitled to be informed how the Debtor intends to pay their claims. Without knowing what payments will be made and when they will be made, it is impossible to assess the feasibility of the Plan or monitor the Debtor's plan compliance.

    9.  The Plan should be amended to provide for the payment of the Department's priority tax claim as required by statute, post-petition interest, specific details of how priority tax claims will be paid, or such details should be included in the confirmation order.

**Administrative Claims.**

    10.  It is not known whether the Department will have an administrative claim in this case.  Regardless, the Debtor is required to stay current with his post-petition tax filings and payments (both personally and his business entity).  The following is provided for the Department to protect its interests.

11. 11 U.S.C. § 1129(a)(9)(A) provides that administrative claims are to be paid on the effective date of the plan in cash. "A court cannot confirm a distribution plan unless the plan provides full cash payments of all Section 503(b) administrative expense claims or the claim holder agrees to different treatment" and the cash payments are made on the effective date. In re Hechinger Inv. Co. of Delaware, 298 F.3d 219, 224 (3rd Cir. 2002). The Department has not agreed to any other treatment. In addition to the principal, this amount includes interest and penalties. See 11 U.S.C. § 503(b)(1)(B)(i) and In re Weinstein, 272 F.3d 39, 48 (1st Cir. 2001) for interest; and 11 U.S.C. § 503(b)(1)(C) for penalties. The Department is statutorily exempt from filing any application for payment of its administrative claims. See 11 U.S.C. § 503(b)(1)(D), which provides:

> (D) notwithstanding the requirements of subsection (a), a governmental unit shall not be required to file a request for the payment of an expense described in subparagraph (B) or (C), as a condition of its being an allowed administrative expense.

This should be explained in the Plan.

**Delinquent Pennsylvania Tax Returns and Other Pennsylvania Tax Obligations.**

12. The Department's records show that the Debtor is current with the filing of his PIT returns. However, for the PIT return for the 2019 tax year, the Department is sending or has sent a request to the Debtor to verify his Unreimbursed Employee Business Expense deduction ($50,411.00) on Line 2 of this tax return. These items have been consistently denied in the prior PIT returns.

13. The Department's records show that the Debtor has not filed for his business Stratosphere, LLC (EIN xx-xxx1664; PA EWT ID No. xxxx8298; PA BP No. xxxxxx1223) Employer Withholding Tax ("EWT") returns Form W-3s (quarterly tax returns) for the 03Q17 through 01Q19 tax periods and the Form W-2 Transmittals (calendar year reconciliation) for the

2015 through 2019 calendar years.  The EWT account was opened effective January 1, 2012 and was closed effective March 31, 2019.

If the Debtor does not provide the necessary information for his 2019 PIT return and there are tax liabilities for any of the delinquent EWT returns, the amounts owed will be classified as unsecured priority claims.  Hence, until the Debtor provides the PIT information and the delinquent EWT returns are resolved, the final amount of the Department's unsecured priority claim will not be known.

**Whether Debtor Is a Small Business.**

14.  There is a question whether the Debtor qualifies as a small business.  The Debtor's income is primarily from wages from which PA state income taxes are withheld.  A small business debtor is essentially defined as a person engaged in commercial or business activities (excluding a person whose primary activity is a business of owning single asset real estate) with at least 50% of the debt from commercial or business activities.  11 U.S.C. § 101(51D)(A) "small business debtor".

It does not appear that the Debtor meets any of the criteria to be considered a small business debtor.

**Default Provision Must Be Added.**

15.  The Plan does not provide for default remedies as required under 11 U.S.C. § 1191(c)(3)(B).  Also, 11 U.S.C. § 1123(a)(5)(G) specifies that a plan shall provide adequate means for a plan's implementation such as provisions for curing any default.  Without a proper default plan provision, tax claimants are forced to pursue collection of plan defaults in the bankruptcy court.  The purpose of post-confirmation jurisdiction is essentially and necessarily limited to protecting the order confirming the plan and preventing interference with the

execution of the plan, not enforcing defaults of plan payments. Warren v. Catania Corp., 178 B.R. 279, 282 (Bankr.M.D.Fla. 1995) [citing Grimes v. Graue (In re Haws),158 B.R. 965, 970 (Bankr.S.D.Tex. 1993)]; and In re American Body Armor and Equipment, Inc., 172 B.R. 659, 662 (Bankr.M.D.Fla. 1994). Jurisdiction is limited to those matters, which will in fact affect the administration of the plan. See In re Bankeast Corp., 142 B.R. 1214 (Bankr.D.N.H. 1992). Defaulting on plan payments involves the execution and implementation of the plan, not the administration of the plan. The Bankruptcy Court should not be burdened with such unrelated bankruptcy issues and opening the bankruptcy estate after it has been closed. It is not believed that the Bankruptcy Court will not want to entertain matters concerning the nonfiling of tax returns, the nonpayment of taxes, the enforcement of the Debtor's tax obligations, the payment of the claims, etc.

A post-confirmation default should be treated as any other contractual default under state law. Instead of increasing the burden on creditors, the Plan should grant creditors clear and concise default remedies in forums with concurrent jurisdiction. See 28 U.S.C. § 1334(b). Without adequate remedies, the Plan deprives the Department of the ability to pursue plan defaults in non-bankruptcy forums.

Accordingly, the Plan should contain the following default provision in case the Debtor fails to comply with any provision in the Plan regarding his tax obligations:

> In the event of default by the Debtor of any of the provisions of the Plan concerning its tax obligations, after fifteen days written notice of the default to the Debtor and failure of the Debtor to cure, the entire amount owed to the tax agency shall be immediately due and owing, and the tax agency may proceed with any remedies otherwise available to it under state law, including but not limited to usual state tax collection procedures, or under federal law, including but not limited to conversion or dismissal under 11 U.S.C. § 1112(b).

The Plan should not be confirmed without this provision.

**Department's Setoff Rights Are Not Provided for under the Plan.**

16. The Plan does not adequately provide for and preserve the Department's setoff and recoupment rights. Under Pennsylvania tax law, the Department and its officials are required by law to collect all taxes due and owing by all taxpayers. From this authority, certain statutory provisions, and its common law right of setoff, the Department invariably pursues setoffs where available to avoid the absurdity of refunding credits to a taxpayer when the taxpayer still has other tax liabilities.

Under Pennsylvania law, a setoff is a counterclaim. Pa.R.Civ.P. 1017 and 1031. Under Fed.R.Civ.P. 7 and 8, a setoff is an affirmative defense or counterclaim. Further, the right of setoff is preserved under Section 553(a) of the Bankruptcy Code, 11 U.S.C. § 553(a). There is no applicable law to deprive the Department or any party of its counterclaims, cross-claims, or affirmative defenses while preserving the claim against the party.

17. Because creditors' setoff rights are fully preserved by Section 553(a), the Department objects to any plan, which does not provide for its setoff and recoupment rights. A plan's anti-setoff provision or a lack of setoff provision is improper. In re Alta & Cast, 2004 WL 484881 *6 (Bankr.Del. 2004) ("There is no basis in the Code to eliminate [] setoff rights. In fact, section 553 expressly preserves whatever setoff rights [a creditor] may have under state law."). Setoff rights survive discharge and confirmation. See IRS v. Luongo (In re Luongo), 255 B.R. 424, 427-428 (Bankr.N.D.Tex. 2000), aff'd, 259 F.3d 323, 333 (5th Cir. 2001); Carolco Televisions, Inc. v. National Broadcasting Co. (In re Delaurentis Entertainment Group, Inc.), 963 F.2d 1269, 1274-1277 (9th Cir. 1992), cert. denied, 506 U.S. 918, 113 S.Ct. 330, 121 L.Ed.2d 249 (1992); and Davidovich v. Welton (In re Davidovich), 901 F.2d 1533, 1537 (10th Cir. 1990).

18. The Department objects to the Plan to the extent it fails to preserve its setoff and recoupment rights. Confirmation of a plan does not extinguish setoff claims when they are timely asserted. United States v. Continental Airlines (In re Continental Airlines), 134 F.3d 536, 542 (3rd Cir. 1998), cert. denied, 525 U.S. 929, 119 S.Ct. 336, 142 L.Ed.2d 277 (1998). Like other creditors, the Department has a common law right to setoff mutual debts. "The government has the same right which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him." United States v. Munsey Trust Co. of Washington, D.C., 332 U.S. 234, 67 S.Ct. 1599, 1602, 91 L.Ed. 2022 (1947) (citing Gratiot v. United States, 40 U.S. (15 Pet) 336, 370, 10 L.Ed. 759 (1841); see also Amoco Prod. Co. v. Fry, 118 F.3d 812, 817 (D.C.Cir. 1997). This right – "which is inherent in the federal government [as well as a state government] – is broad and 'exists independent of any statutory grant of authority to the executive branch.'" Marre v. United States, 117 F.3d 297, 302 (5th Cir. 1997) (quoting United States v. Tafoya, 803 F.2d 140, 141 (5th Cir. 1986)). Hence, a government creditor can setoff mutual prepetition debts and claims as well as post-petition debts and claims. Zions First National Bank, N.A. v. Christiansen Bros. (In re Davidson Lumber Sales, Inc.), 66 F.3d 1560, 1569 (10th Cir. 1995); and Mohawk Industries, Inc. v. United States (In re Mohawk Industries, Inc.), 82 B.R. 174, 178-179 (Bankr.D.Mass. 1987). The Plan makes no provision for these rights. Such treatment is impermissible, because Section 553 preserves the right of setoff in bankruptcy as its exists outside bankruptcy, Citizens Bank of Maryland v. Strumpf, 516 U.S. 16, 116 S.Ct. 286, 289, 133 L.Ed.2d 258 (1995), neither expanding nor constricting it, United States v. Maxwell, 157 F.3d 1099, 1102 (7th Cir. 1998). "[T]he government of the United States [as well as a state government] suffers no special handicap under § 553 of the Bankruptcy Code," Id. at 1103, that alters this principle. Moreover, because

"[s]etoff occupie[s] a favored position in our history of jurisprudence," Bohack Corp. v. Borden, Inc., 599 F.2d 1160, 1164 (2d Cir. 1979), courts do not interfere with its exercise absent "the most compelling circumstances." Niagra Mohawk Power Corp. v. Utica Floor Maintenance, Inc. (In re Utica Floor Maintenance, Inc.), 41 B.R. 941, 944 (N.D.N.Y. 1984); see also New Jersey National Bank v. Gutterman (In re Applied Logic Corp.), 576 F.2d 952, 957-958 (2d Cir. 1978) ("The rule allowing setoff … is not one that courts are free to ignore when they think application would be unjust.") Compelling circumstances generally entail criminal conduct or fraud by the creditor. In re Whimsy, Inc., 221 B.R. 69, 74 (Banker. S.D.N.Y. 1998). No such compelling circumstances are present here, and accordingly, the Plan must provide for and preserve the Department's setoff rights. Failure to do so violates Section 1129(a)(1). ("The court shall confirm a plan only if … the plan complies with the applicable provisions of this title.")

Accordingly, the Plan should have language allowing all setoff rights as provided in the Bankruptcy Code.

**Tax Consequences of the Plan Are Disregarded.**

19. The Plan does not provide for the handling of the taxes from the sale of any of the real properties. It is likely that the sale of each parcel of real property will result in a tax gain. The Plan should provide that the full amount of the PIT taxes due on the gain should be set aside from the sale proceeds on the date of the completion of the sale and paid to the Department as part of the Debtor's quarterly estimated installment payments for the tax year. Further, the Debtor should be required to timely pay all his estimated quarterly tax payments for the 2021 and subsequent tax years.

20. If any of the Debtor's real properties is sold before the confirmation of the plan, the sale would not be exempt from the Pennsylvania Realty Transfer Tax. <u>See</u> Section 1146(a) which provides

> The issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer <u>under a plan confirmed</u> under section 1129 of this title, may not be taxed under any law imposing a stamp tax or similar tax. (Underscoring Added)

In <u>In re Hechinger Investment Co. of Delaware, Inc.</u>, 335 F.3d 243, 254 (3rd Cir. 2003), the Court held that Bankruptcy Code exemption provision, 11 U.S.C. § 1146(c) [presently 1146(a)], prohibiting a stamp or similar tax on transfers "under a plan confirmed" does not apply to pre-confirmation transactions. That is, in order for a sale of real estate to be exempt from transfer and stamp taxes (Pennsylvania Realty Transfer Tax) under Section 1146(a), the transfer has to be made after the date the plan is confirmed. <u>See also</u> <u>Florida Department of Revenue v. Piccadilly Cafeterias, Inc.</u>, 554U.S. 33, 171 L.Ed.2d 203, 128 S.Ct. 2326, 2333 (2008), where the Court said that "the exemption applies only to post-confirmation transfers."

    b. The Plan should include the following provision:

> The imposition of a transfer, stamp, or other similar taxes shall not be imposed on the delivery and acceptance of the instrument of transfer (i.e., deed) when the delivery and acceptance is made after the plan has been confirmed as provided for by Bankruptcy Code Section 1146(a) and the applicable case law. If there is no confirmed plan and the delivery and acceptance of the instrument is made prior to the confirmation of the plan, the instrument of transfer is subject to the transfer, stamp, or other similar taxes.

The Plan should provide for the aforementioned tax matters.

**<u>Liquidation Analysis Is Incomplete.</u>**

21. The Liquidation Analysis (Exhibit A) is incomplete and inadequate as it has a number of unknown values which affect the determination of whether nonaccepting creditors

will receive as much under the Plan as they would receive in a Chapter 7 liquidation. Also, the mortgage values should be verified and confirmed.

The Plan cannot be confirmed.

**Projected Financial Information Is Not Adequate.**

22. The Debtor's three year income projections are inadequate and do not provide the necessary information for the Department and the other creditors to determine whether the Plan is feasible. This projection appears to be the best case scenario. The projection does not include any items resulting from the Debtor's personal investment losses. There should be another verifying projection showing the Debtor's historical earnings as well as a presentation of worst case scenario projection.

The Plan cannot be confirmed.

**Feasibility Requirement Not Met.**

23. 11 U.S.C. § 1129(a)(11) requires as a condition of confirmation that the Court find that confirmation is "not likely to be followed by liquidation, or the need for further financial reorganization of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed under the plan.

a. In effect, Section 1129(a)(11) imposes a "feasibility" requirement for confirmation. In re Greate Bay Hotel & Casino, Inc., 251 B.R. 213, 226-227 (Bankr.D.N.J. 2000). Although the standards for determining feasibility are not rigorous, In re Orfa Corp. of Philadelphia, 129 B.R. 404, 410 (Bankr.E.D.Pa. 1991), the court is obligated to independently evaluate the plan and determine whether it offers a reasonable probability of success. In re Monnier Bros., 755 F.2d 1336, 1341 (8th Cir. 1985); and In re Sovereign Oil Co., 128 B.R. 585, 586 (Bankr.M.D.Fla. 1991).

    b. The plan proponent must present evidence to sufficiently demonstrate that the plan has a reasonable chance of succeeding. In re Acequia, Inc., 787 F.2d 1352, 1364 (9th Cir. 1986). "Guaranteed success in the stiff winds of commerce without the protections of the Code is not the standard under [Section 1129(a)(11)].... All that is required is that there be a reasonable assurance of commercial viability." In re Prudential Energy Co., 58 B.R. 857, 862 (Bankr.S.D.N.Y. 1986).

    c. In considering whether a particular plan passes the feasibility test, a court should consider: (1) the adequacy of the debtor's capital structure; (2) the earning power of its business; (3) economic conditions; (4) the ability of the debtor's management; (5) the probability of the continuation of the same management; and (6) any other related matters that determine the prospects of a sufficiently successful operation to enable performance of the provisions of the plan. In re Greate Bay Hotel & Casino, Inc., 251 B.R. at 226-227. See In re Temple Zion, 125 B.R. 910, 915 (Bankr.E.D.Pa. 1991); and In re Landmark at Plaza Park, Ltd., 7 B.R. 653, 659 (Bankr.D.N.J. 1980). Here, the Debtor clearly has not adequately shown that he has met these tests.

    d. The purpose of the feasibility condition is to "prevent confirmation of visionary schemes which promise creditors ... more under a proposed plan than the debtor can possibly attain after confirmation." In re Great Northern Protective Services, Inc., 19 B.R. at 803, citing 5 Collier on Bankruptcy ¶ 1129.02(11) at 1129-34 (15th ed. 1981). The Debtor has not presented any evidence demonstrating that the Plan has "a reasonable probability of success." In re Acequia, Inc., 787 F.2d at 1364. The Debtor has not presented any "conservative" and "best case" projections" regarding the pluses and minuses of the success of his Plan. Id.

    The Plan cannot be confirmed.

**Confirmation Requirements Not Met.**

24. A court can only confirm a plan if, <u>inter alia</u>, it complies with the applicable provisions of the Bankruptcy Code. <u>See</u> 11 U.S.C. §§ 1191(a) and 1129(a)(1). <u>See also</u> <u>United Aid Funds, Inc. v. Espinosa</u>, 559 U.S. 260, 130 S.Ct. 1367, 1381-1382, 176 L.Ed.2d. 158 (2009); <u>In re ACandS, Inc.</u>, 311 B.R. 36, 42-43 (Bankr.D.Del. 2004); and <u>In re Economy Cast Stone Co.</u>, 16 B.R. 647, 650 (Bankr.E.D.Va. 1981).

25. The Bankruptcy Code and the case law make it clear that courts must assess whether a plan meets the statutory requirements for confirmation independently (i.e., even if no creditor objects to the plan). <u>See</u> 11 U.S.C. § 1129(a) ("The court shall confirm a plan only if all of the following requirements are met:". <u>See also</u> <u>United Aid Funds, Inc. v. Espinosa</u>, 130 S.Ct. at 1381-1382; <u>In re ACandS, Inc.</u>, 311 B.R. at 42-43; and <u>In re Economy Cast Stone Co.</u>, 16 B.R. at 650.

26. The proposed Plan cannot be confirmed as it has not been proposed in good faith as required under 11 U.S.C. § 1129(a)(3). A plan fails to meet the good faith requirement where (1) it is inconsistent with Bankruptcy Code's objectives, (2) it is not proposed with honest intentions and an achievable basis for reorganization, or (3) lacks fundamental fairness in dealing with creditors. <u>In re Lernout & Hauspie Speech Products N.V.</u>, 308 B.R. 672, 675 (D.Del. 2004).

Again, the proposed Plan cannot be confirmed as it does not comply with the applicable provisions of the Bankruptcy Code as required under 11 U.S.C. § 1129(a)(1).

Accordingly, confirmation of the Plan should be denied.

WHEREFORE, the Department respectfully requests that the confirmation of the Debtor's Plan of Reorganization for Small Business under Chapter 11 be denied.

Respectfully submitted,

Date: December 30, 2020  */s/ Christos A. Katsaounis*
Christos A. Katsaounis
Senior Counsel
PA Department of Revenue
Office of Chief Counsel
P.O. Box 281061
Harrisburg, PA 17128-1061
ckatsaouni@state.pa.us
Attorney ID No. 20196 (PA)
Telephone: (717) 346-4643
Facsimile: (717) 772-1459

15