**Fill in this information to identify the case:**

Debtor Name <u>Stephen Todd Walker</u>

United States Bankruptcy Court for the: <u>Eastern</u> District Of <u>Pennsylvania</u>

Case number: 20-13557 (ELF)

☑ Check if this is an amended filing

Official Form 425A

# First Amended Plan of Reorganization for Small Business Under Chapter 11

02/20

Stephen Todd Walker's <u>First Amended</u> Plan of Reorganization, Dated ~~November 25, 2020~~<u>February 1, 2021</u> (the "Plan")

**Background for Cases Filed Under Subchapter V**

  A. Description and History of the Debtor

Stephen Todd Walker (the "Debtor") is an adult individual who has been a financial advisor since 1993. In March of 2001, the Debtor became employed by Morgan Stanley, which became Morgan Stanley Smith Barney, LLC in 2009 ("Morgan Stanley"). During his tenure there, the Debtor was one of Morgan Stanley's most successful executives. Indeed, out of approximately 24,000 financial advisors, the Debtor was ranked in the Top 150. When the Morgan Stanley predecessor entity merged with Smith Barney, Morgan Stanley gave the Debtor a "Retention Bonus" to remain with the firm. Subsequently, the Debtor expressed some concern over certain products that Morgan Stanley was selling, which ultimately led to Morgan Stanley terminating the Debtor. This resulted in the Debtor bringing what ultimately became an -eight-year arbitration proceeding before the Financial Industry Regulatory Authority, at great expense to the Debtor.

Unfortunately for the Debtor, while the Debtor was awarded a recovery on his affirmative claims against Morgan Stanley, that recovery was eclipsed by a larger award granted to Morgan Stanley on account of Morgan Stanley's counterclaims for the "Retention Bonus" to the Debtor that became unforgiveable when the Debtor's employment was terminated.

Morgan Stanley confirmed that award as a judgment in the United States District Court for the Eastern District of Pennsylvania and although a settlement was initially reached by the parties, the Debtor missed a payment, which resulted in a breach and thereby enabled Morgan Stanley to enforce the judgment. Morgan Stanley's judgment, which also was transferred into Montgomery County Court of Common Pleas, acts as a judicial lien against the Debtor's real estate at 611 Rose Lane, Bryn Mawr, Pennsylvania (the "Bryn Mawr Property") and 1150 Youngsford Road, Gladwyne, Pennsylvania (the "Gladwyne Property").

In addition to the aforementioned Morgan Stanley matter, the Debtor incurred significant costs associated with other litigation, which magnified and exacerbated the Debtor's financial situation. For example, since August of 2019, the Debtor has been embroiled in a contentious domestic relations case with his spouse in the Montgomery County Court of Common Pleas. In addition, the Debtor is defending and pursuing malpractice claims in an action in Philadelphia County Court of Common Pleas against the lawyers and law firm that represented him in the Morgan Stanley matter. And finally, the Debtor is defending and pursuing claims against his spouse's parents in Montgomery County Court of Common Pleas.

As a result of all of the above, the Debtor filed the within chapter 11 bankruptcy case on September 1, 2020. The Debtor is a "small business" as defined in the Bankruptcy Code and has elected to proceed under Subchapter V, which, as more fully detailed below, allows the Debtor to reorganize by devoting all of his disposable income to the payment of creditors for a specified period of time.

Official Form 425A    page **2**

**B. Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors who do not accept the Plan will receive at least as much under the Plan as such claim holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as Exhibit "A". As set forth in the liquidation analysis, the total amount distributable to creditors, before paying the costs associated with liquidating those assets, is $13,729.

It should be noted that eight of the assets identified in the liquidation analysis have an "Unknown" value. With respect to the first five assets with an "Unknown" value, they are old investments in funds that cannot be quantified, but nevertheless they are believed by the Debtor to have no or nominal value. Accordingly, those assets, even if liquidated, are believed by the Debtor to have no or an inconsequential impact on the liquidation analysis.

With respect to the asset identified as "Local Tax: possible refund from City of Philadelphia," this asset too is not yet quantifiable, but, even once liquidated, is not expected to have any meaningful impact on the liquidation analysis.

Finally, the two remaining assets with an "Unknown" value are claims in litigation, which by their very nature are unliquidated and, until liquidated, are speculative in value. The Debtor has not yet decided whether the costs associated with pursuing those claims is warranted, but, as more fully set forth below, the Debtor proposes to devote any and all recoveries, after payment of costs and expenses associated with pursuing those claims, to payments under this Plan. Therefore, creditors will get the same benefit therefrom under the Plan just as they would in a liquidation.

**C. Ability to make future plan payments and operate without further reorganization**

The Plan Proponent must also show that he will have enough cash over the life of the Plan to make the required Plan payments and service his post-petition expenses.

The Plan Proponent has provided projected financial information as Exhibit "B", which consist of a projected three-year cash flow, along with a breakdown of the Debtor's customary household expenses. The cash flow projections reflect that the Debtor earns income from his present employer two ways.

First, the Debtor receives "loans" pursuant to the Schedule attached as Exhibit "C" (the "Employer Loans"). The advances from the Employer Loans are initially treated as loans by the employer to the Debtor until they become forgiven by the employer based upon the latter to occur of the Debtor achieving gross production of $7,500,000 or remaining with the employer for 5 years. To the extent that the Employer Loans are forgiven, they are then treated as ordinary income to the Debtor. Because the Debtor will be taxed on the Employer Loans once they become ordinary income, the Debtor's plan provides for the creation of a tax escrow ~~equal to 35%~~after the last loan advance for the purpose of ~~the face amount of~~paying taxes on the loans once they are treated as ordinary income to the Debtor (the "Tax Escrow Account")~~, which is consistent with the Debtor's current withholdings."~~). The Tax Escrow Account will consist of a separate account used for the sole purpose of first paying income taxes owing by the Debtor once assessed against the Debtor and second to repay the employer on account of its administrative claim if and to the extent that the Debtor has an obligation to repay any Employer Loans that were not forgiven by the employer. To be clear, in the event that any portion of the Employer Loans becomes owing, the funds in the Tax Escrow Account will be used first to pay any income tax owing or to become owing by the Debtor. The Debtor's cash flow projections contemplate that the Tax Escrow Account will not be funded until after payment in full of all claims with a priority under § 507 of the Bankruptcy Code (including the Debtor's domestic support obligations under 507(a)(1), administrative expenses under 507(a)(2) and priority tax claims under 507(a)(8) (collectively, the "Priority Claims")) and the mortgage arrearages on the Bryn Mawr Property, which is the Debtor's residence (the "Mortgage Arrears").

Second, the Debtor receives fee income derivative of the fees charged on account of services provided to his ~~client~~clients. The Debtor's projected fee income is reflected on a gross basis; accordingly, the Debtor has deducted tax withholdings at a rate of 35% consistent with the Debtor's most recent paychecks, along with insurance deductions and domestic relations deductions (the "Net Fee Income").

In all events, the Employer Loans and Net Fee Income will be first used to (1) pay all of the Debtor's monthly expenses; (2) fund the Tax Escrow Account; (3) fund a reserve equal to the Debtor's expenses ~~for the following~~

~~month; and (4~~in the amount of $16,000 for the following month; (4) create a cash flow reserve, when and if required, to ensure that the Debtor will have sufficient cash to make future monthly distributions under the Plan; and (5) pay professional fees and costs associated with the pending domestic relations and post- confirmation relating to this case, all as set forth in Exhibit B, with all remaining funds paid to the Subchapter V Trustee to fund distributions in accordance with this Plan (the "Disposable Income"), which the Debtor believes is consistent with the defined statutory projected disposable income (as defined by § 1191(d) of the Bankruptcy Code (the "Code")). ~~Consistent with the period described in § 1191(c)(2), the Debtor projects paying his~~ In this regard, the Debtor is, and continues to expect to be, a W-2 employee with adequate taxes withheld. In addition, his Disposable Income calculation contemplates that after payment in full of the Priority Claims and the Mortgage Arrears the Debtor will pay into a tax escrow sufficient funds for the anticipated taxes that will become owing when loans to the Debtor by his present employer become forgiven and, thus, treated as ordinary income to the Debtor. Nevertheless, the Debtor will pay any such future tax obligations in the ordinary course as a deductible expense from his Disposable Income. Consistent with the period described in § 1191(c)(2), the Debtor projects paying his

Disposable Income to fund a plan for a period of three years in the aggregate amount of $~~445~~488,000.00.

The final Plan payment is expected to be paid on the third anniversary after the "Effective Date,~~" which is defined as the first day of the first month following the date that the Order confirming this Plan becomes final and non- appealable~~" as defined in Section 8.02 below.

*All of the income figures in the cash flow are projections to the best of the Debtor's ability, but it must be stressed that none of the Debtor's income is guaranteed~~, but~~; instead, in one respect or another, it is performance-based and can fluctuate based upon factors outside the Debtor's control, including the effects that the global pandemic will have on investments, the general volatility of market conditions and other factors.*

Finally, the domestic relations deduction to the Debtor's income is consistent with what is in place as of the filing of this Plan, but it can be adjusted by the presiding court.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

### Article 1: Summary

This Plan under chapter 11 of the Code proposes to pay creditors of the Debtor from the disposable income remaining after the Debtor's Employer Loans and Net Fee Income pay for certain expenses and obligations as more fully set forth in this Plan.

This Plan provides for:
- 1 ____ class of priority claims;
- 6 classes of secured claims;
- 1 class of non-priority unsecured claims; and
- 1 class of interests that the Debtor has in property of the estate.

This Plan also provides for the payment of administrative and priority claims.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 7.5 cents on the dollar based upon the following assumptions:

$4~~45~~488,000 Disposable Income
($~~23~~64,000) Domestic Support Priority Claim
(~~$75~~(42,500) Post-Petition Domestic Support
($93,000) Debtor's counsel Administrative Expense Claim
($~~15~~7,000) Subchapter V Administrative Expense Claim
($~~30~~38,000) Priority Tax ~~Claim~~Claims (with interest)
($78,000) Wells Fargo prepetition arrearages
($6,000) PNC prepetition arrearages (two mortgages)

~~$218,000 Available to distribute to unsecured creditors with a class of approximately $2,900,000 in claims.~~
Based upon the above, the Debtor anticipates that $159,500 will be available to distribute to unsecured creditors with a class of approximately $2,140,000 in claims. The Debtor wishes to note that the cash flow projections reflect approximately $476,000 available for distribution through 2023, but since the Effective Date is expected to be in March of 2021, there will be two additional months of the 36-month plan term not reflected in the cash flows, which end in December of 2023. Accordingly, the Debtor has added another $12,000 to the disposable income calculations to reflect a full 36 months. Finally, if the Subchapter V Trustee reviews reports and implements distributions as contemplated by this Plan, the Debtor anticipates that the costs associated with that process will be $14,400 (i.e., $400 per month for 36 months), which will reduce the amount available to pay unsecured creditors to approximately 6.8 cents on the dollar.

All creditors should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. Your rights may be affected. You should read ~~these paper~~this Plan carefully and discuss ~~them~~it with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

### Article 2: Classification of Claims and Interests

2.01 **Class 1** ............................... Class 1 consists of all allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2) and priority tax claims under § 507(a)(8)).

Class 1A shall consist of the allowed domestic support claim of Dorothy Schade Walker (the "Spouse") pursuant to § 507(a)(1) in the nature of (1) prepetition child support~~.~~; (2) prepetition alimony; (3) an allowed "tax-free lump-sum" payment pursuant to a Premarital Agreement between the Debtor and the Spouse; and (4) any and all other domestic support obligations. All post-petition payments with respect to child support shall be paid by the Debtor monthly and treated as an allowed expense. Child support is deducted from the Debtor's pay; alimony is paid pursuant to the Plan.

2.02 **Class 2** ............................... Class 2 consists of the following claims, to the extent allowed as a secured claim under § 506 of the Code:

Class 2A shall consist of the allowed secured claim of Wells Fargo Bank, N.A., which has a valid and properly recorded first priority mortgage lien on the Bryn Mawr Property.

Class 2B shall consist of the allowed secured claim of PNC Bank, N.A., which has a valid and properly recorded second priority mortgage lien on the Bryn Mawr Property.

Class 2C shall consist of the allowed secured claim of PNC Bank, N.A., which has a valid and properly recorded third priority mortgage lien on the Bryn Mawr Property.

Class 2D shall consist of the allowed secured claim of PHH Mortgage Services/HSBC Bank USA, National Association Trustee for ~~Sequoai~~ Sequoia Mortgage Trust 2007-2, which has a valid and properly recorded first priority mortgage lien on the Gladwyne Property.

|  |  |
|---|---|
|  | Class 2E shall consist of the allowed secured claim of Rushmore Loan Management Servicing/Goldman Sachs Mortgage Company, which has a valid and properly recorded second priority mortgage lien on the Gladwyne Property. |
|  | Class 2F shall consist of the allowed secured claim of Morgan Stanley Smith Barney, LLC, which has a judicial lien on the Gladwyne Property, with a priority subordinate to the liens of the Class 2D and Class 2E creditors. |
| 2.03 **Class 3** ............................... | Class 3 consists of all non-priority unsecured claims allowed under § 502 of the Code, which shall also include the<u>any</u> deficiency <s>claim of Morgan Stanley</s><u>claims that exist</u> after the sale of the Gladwyne Property<u>, including any deficiency claim of Morgan Stanley and John and Marilyn Schade</u>. |
| 2.04 **Class 4** ............................... | Class 4 consists of the interests of the Debtor in property of the Estate. |

### Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

|  |  |
|---|---|
| 3.01 **Unclassified claims** | Under section § 1123(a)(1), administrative expense claims and priority tax claims are not in classes. |
| 3.02 **Administrative expense claims** | Administrative expense claims shall consist of the allowed claims of the Debtor's court-employed professionals, along with the Subchapter V Trustee. The Debtor estimates that the aggregate amount of allowed administrative expense claims <u>(exclusive of post-petition alimony)</u> shall be $<s>90</s><u>100</u>,000. Each holder of an administrative expense claim allowed under § 503 of the Code will be paid pro rata from the Debtor's Disposable Income based upon their claims as allowed by this Court starting on the <s>Effective Date</s><u>first month of payment in full</u> of the <s>Plan</s><u>Class 1A claim</u> and continuing each month until paid in full. |

| | | |
|---|---|---|
| 3.03 **Priority tax claims** | | Each holder of a priority tax claim, with interest that accrues thereon at the annual rate of 3%, will be paid each month from the Debtor's disposable income pro rata starting in the first month following payment in full of all the Class 1A claim and Administrative Expense claims. Priority tax claims will be paid from all of the Debtor's disposable income until paid in full, which, according to the cash flow projections, will be by August of 2020, but in no event shall Priority tax claims be paid later than the end of the earlier of the Plan payment period or 60 months from the Petition Date. |
| | | Holders of priority tax claims consist of the Internal Revenue Service (the "IRS") and Pennsylvania Department of Revenue ("Revenue"). Based upon the Debtor's filed 2019 returns, the IRS has a priority tax claim in the amount of $26,923. Revenue has a combined secured claim and priority tax claim, all of which will be treated as a priority tax claim for purposes of payment under the Plan in the aggregate amount of $8,500.36. Revenue shall retain its lien until its secured claim is paid in full. |
| 3.04 **Statutory fees** | | Not applicable. |
| 3.05 **Prospective quarterly fees** | | Not applicable. |

### Article 4: Treatment of Claims and Interests Under the Plan

4.01 **Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - Priority claims excluding those in Article 3 | ☐ Impaired<br>☑ Unimpaired | Each holder of a Class 1 Priority Claim will be paid in full, in cash, upon the later of the Effective Date of this Plan, the date on which such claim is allowed by a final non-appealable order or as otherwise provided in the Premarital Agreement. |
| Class 2A-F – Secured claims | ☑ Impaired<br>☑ Unimpaired | Class 2A shall consist of the allowed secured claim of Wells Fargo Bank, N.A. ("Wells Fargo"), which is impaired. Wells Fargo has a valid and properly recorded first priority mortgage lien on the Bryn Mawr Property. The Debtor will pay Wells Fargo its regular monthly mortgage payments (along with any applicable escrow) current post-petition. With respect to the prepetition arrearages owed to Wells Fargo in the stated amount of $77,870.88, the arrearage claim shall be paid from all of the Debtor's Disposable Income until the arrearage claim is paid in full (provided that the repayment period shall not exceed the Plan payment period) starting on the month following payment in full of all Class 1A claims, administrative expense claims and Priority Tax Claims. . |

Class 2B shall consist of the allowed secured claim of PNC Bank, N.A. ("PNC"), which is impaired. PNC has a valid and properly recorded second priority mortgage lien on the Bryn Mawr Property, which is unimpaired. The Debtor will pay PNC its regular monthly mortgage payments current post-petition. With respect to the prepetition arrearages owed to PNC in the amount of $2,578.80, the Debtor shall pay same on the month following payment in full of all Class 1A claims, administrative expense claims and Priority Tax Claims until the arrearage claim is paid in full, provided that the repayment period shall not exceed the Plan payment period

Class 2C shall consist of the allowed secured claim of PNC, which is impaired. PNC has a valid and properly recorded third priority mortgage lien on the Bryn Mawr Property, which is unimpaired. The Debtor will pay PNC its regular monthly mortgage payments current post-petition. With respect to the prepetition arrearages owed to PNC in the amount of $3,426.22, the Debtor shall pay same on the month following payment in full of all Class 1A claims, administrative expense claims and Priority Tax Claims until the arrearage claim is paid in full, provided that the repayment period shall not exceed the Plan payment period.

Class 2D shall consist of the allowed secured claim of PHH Mortgage Services/HSBC Bank USA, National Association Trustee for ~~Sequoai~~Sequoia Mortgage Trust 2007-2 ("PHH"), which is unimpaired. PHH has a valid and properly recorded first priority mortgage lien on the Gladwyne Property. The Debtor will pay PHH in connection with his sale of the foregoing property either pursuant to this confirmed plan or, if sooner, pursuant to § 363.

Class 2E shall consist of the allowed secured claim of Rushmore Loan Management Servicing/Goldman Sachs Mortgage Company ("Rushmore"), which is unimpaired. Rushmore has a valid and properly recorded second priority mortgage lien on the Gladwyne Property. The Debtor will pay Rushmore in connection with his sale of the foregoing property either pursuant to this confirmed plan or, if sooner, pursuant to § 363.

Class 2F shall consist of the allowed secured claim of Morgan Stanley Smith Barney, LLC ("Morgan Stanley"), which is unimpaired. Morgan Stanley has a judicial lien on the Gladwyne Property, with a priority subordinate to the liens of the Class 2D and Class 2E creditors. The Debtor will pay Morgan Stanley to the extent of any equity in his sale of the foregoing property either pursuant to this confirmed plan or, if sooner, pursuant to § 363.

| | | |
|---|---|---|
| Class 3 – **Non-priority unsecured creditors** | ☑ Impaired<br>☐ Unimpaired | Each holder of a Class 3 Claim will be paid from the Debtor's Disposable Income, in cash, upon the later of the effective date of this Plan, the date on which such claim is allowed by a final non-appealable order or the beginning on the first month after the following Classes/Claims have been paid in full: (1) Class 1; (2) Administrative Expense Claims; (3) Priority Tax Claims; (4) Class 2A arrearage claim; (5) Class 2B arrearage claim; and (6) Class 2C arrearage claim.<br><br>John and Marilyn Schade (the "Schades") have asserted an equitable lien on the Gladwyne Property, which the Debtor is actively attempting to sell. If the Bankruptcy Court determines that the Schades have an allowed claim, secured by a valid lien with a priority that causes it to be |

|  |  |  |
|---|---|---|
|  |  | paid partially or fully from the Debtor's sale of the Gladwyne Property, the Schades will be deemed to hold an allowed secured claim to the foregoing extent, and to the extent that any portion of their allowed claim is not paid from the sale of the Gladwyne Property, that portion of their allowed claim shall be an allowed Class 3 Claim. |
| Class 4 – Debtor's interest in property of the estate. | ☐ Impaired<br>☑ Unimpaired | The Debtor will retain his interests in property of the estate. |

### Article 5: Allowance and Disallowance of Claims

| 5.01 **Disputed claim** | A *disputed claim* is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either:<br>(i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or<br>(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. |
|---|---|
| 5.02 **Delay of distribution on a disputed claim** | No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order. |
| 5.03 **Settlement of disputed claims** | The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |

### Article 6: Provisions for Executory Contracts and Unexpired Leases

| | |
|---|---|
| 6.01 **Assumed executory contracts and unexpired leases** | (a) The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the Effective Date: There are no executory contracts or unexpired leases in this case and, thus, subpart (b) is inapplicable to this Plan. |

(b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the Effective Date or under section 6.01(a) of this Plan, or tha are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30         days after the date of the order confirming this Plan.

### Article 7: Means for Implementation of the Plan

The Plan will be implemented as follows:

First, in connection with or prior to Plan confirmation, the Debtor intends to sell the the Gladwyne Property. This will retire the debt owed to PFF, the first mortgage holder, and Rushmore, the second mortgage holder, as well as reduce the amount owing to Morgan Stanley (or to whomever is in line for payment based upon a final judicial determination or agreement regarding lien priority on the Gladwyne Property) by approximately $700,000. Reducing the Morgan Stanley claim (or other secured claim(s) on the Gladwyne Property) will increase the pro rated return to unsecured creditors because the pool of unsecured debt in Class 3 entitled to distributions will be reduced by the amount paid to Morgan Stanley in connection with the sale of the Gladwyne Property (and/or the Schades) in connection with the sale of the Gladwyne Property. Furthermore, if the Gladwyne Property is sold pursuant to this Plan, the transaction will be exempt from transfer tax pursuant to Bankruptcy Code Section 1146(a), thus further increasing the payment to any secured creditor(s) and commensurately reducing the dollar amount of Class 3 unsecured creditors. On a related topic, the Debtor will eliminate the debt service associated with the two aforementioned mortgages by retiring those mortgages and any carrying costs associated with the Gladwyne Property, thereby increasing the Disposable Income payable to unsecured creditors pursuant to the Plan.

Second, as more fully set forth on the Debtor's cash flow projections attached as Exhibit B, the Debtor projects generating the aggregate sum of $445488,000.00 that will be distributed to creditors on account of their allowed claims in the following statutory order of priority: (1) the domestic relations priority claim of Dorothy Schade Walkerthe Spouse; (2) administrative expense claims; (3) priority tax claims; (4) mortgage arrearages on the Bryn Mawr Property and (5) the claims of unsecured creditors. The Debtor anticipates that he will pay his monthly Disposable Income to the Subchapter V Trustee for disbursement consistent with this Plan. Within ten days of the Effective Date and then no later than the 15th day in each calendar month thereafter, the Debtor shall deliver to the Subchapter V Trustee (collectively, the "Post-Petition Obligations") (1) a report setting forth the calculation of the Disposable Income distributable to creditors, (2) a copy of the Debtor's bank account statement and any other backup reasonably requested by the Subchapter V Trustee to confirm the propriety of the Disposable Income calculation, and (3) a check payable to "Richard Furtek, Subchapter V Trustee for the Estate of Stephen Todd Walker" in the amount of the Disposable Income. If the Debtor fails to comply any of his Post-Petition Obligations or if Subchapter V Trustee disagrees with the Debtor's Disposable Income calculation, he and the Debtor shall work collaboratively to resolve any such dispute, the failure of which shall give rise to the right of the Subchapter

<u>V Trustee to file with the Bankruptcy Court a notice of dispute with respect to the Disposable Income calculation and thereby enabling the Subchapter V Trustee or any other party in interest to seek appropriate relief from the Bankruptcy Court. The Subchapter V Trustee shall have the right to retain from the amounts paid to him by the Debtor a sum not to exceed $400 monthly on account of the time and services devoted by the Subchapter V Trustee to the services required above.</u>

Finally, the Debtor shall have the exclusive right, but shall be under no obligation, to pursue causes of action allowed under applicable law or under the Bankruptcy Code (although the Debtor is not aware of any actions under the Bankruptcy Code). Although the Debtor is not aware of any Bankruptcy ~~are not aware of the existence of any such~~ Causes of Action, if they do exist, the Debtors shall prosecute causes of action diligently so as to conclude such actions as soon as practicable, with the proceeds therefrom ~~being deposited into the Disbursement Account and paid~~, <u>including the proceeds from any pursued non-Bankruptcy cause of action, being paid to the Subchapter V Trustee for distribution</u> in accordance with this Plan.

From and after the Effective Date, the Reorganized Debtor may, in the ordinary course and without the necessity of any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professional persons thereafter incurred, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

**Article 8: General Provisions**

| | |
|---|---|
| 8.01 **Definitions and rules of construction** | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used, but not otherwise defined, in this Plan. |
| 8.02 **Effective date** | The "Effective Date" of this Plan is the first day of the month following the latter of (1) the date that is 14 days after the entry of the confirmation order or (2) the date when the Debtor has sufficient cash on hand to pay in full all allowed Class 1 Priority Claims. If, however, a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 **Binding effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| [8.06 **Controlling effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Pennsylvania govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| [8.07 **Corporate governance** | Not applicable. |

| | |
|---|---|
| [8.08 **Retention of Jurisdiction** | The Court shall retain jurisdiction of this Case after the Confirmation Date for the following purposes: |

(a)     To take any action with respect to the subordination, allowance, disallowance, validity, perfection, enforcement or avoidance of Claims and liens, including, determination of objections to the allowance of claims and amendments to schedules;

(b)     To classify the Claim of any Claimant and to re-examine Claims which have been allowed for purposes of voting, and to determine such objections as may be filed to Claim;

(c)     To determine any and all disputes arising under or the Plan;

(d)     To determine any and all applications for allowance of compensation and reimbursement of expenses herein;

(e)     To determine any applications for rejection of executory contracts and unexpired leases and to determine the amount of any Claims resulting from the rejection thereof or from the rejection of executory contracts or unexpired leases pursuant to the Plan;

(f)     To determine any and all applications, adversary proceedings and contested and litigated matters pending in the Case as of the Confirmation Date or filed within one hundred eighty days thereafter;

(g)     To hear, determine and enforce any Code created Causes of Action and to authorize prosecution of same in such other courts as may be required by law;

(h)     To modify any provision of the Plan to the full extent permitted by the Code;

(i)     To correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes, intent and effect of the Plan;

(j)     To determine such other matters as may be provided for in the Confirmation Order or as may be authorized under provision of the Code or otherwise deemed appropriate to accomplish the Plan's intent and purpose;

(k)     To grant extensions of any deadline set herein;

(l)     To enforce all discharge provisions under the Plan;

(m)     To enter any order, including injunctions, necessary to enforce the terms of the Plan, and the rights and power of the Debtors under the Code, this Plan and as the Court may deem necessary; and

(n)     To enter a Final Order closing this Case.

**Article 9: Discharge**

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:
    (i) imposed by this Plan; or
    (ii) to the extent provided in § 1141(d)(62).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:
    (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or
    (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

Article 10: Other Provisions – None Article 10: Other Provisions – Since the Debtor and the Spouse are parties to a domestic relations matter pending in the Court of Common Pleas of Montgomery County, Pennsylvania (the "Family Law Court"), and have agreed to submit some or all of the issues in that matter to arbitration, nothing in this Plan is intended to limit (1) the rights of the parties to pursue and resolve claims before the Family Law Court or in arbitration; (2) any right of the Spouse to recover property that is hers and not the Debtor's; (3) claims of the Spouse's that are not discharged pursuant to Bankruptcy Code Section 523; (4) the jurisdiction or power of the Family Law Court or an arbitrator to address any matters properly before it, him or her; (5) the right to assert any and all setoff and recoupment rights; and (6) the right to assert before the Family Law Court or in arbitration any other rights, claims, actions or defenses under any agreement, at law, in equity or otherwise properly before it, him or her.

/s/ Stephen Todd Walker
Stephen Todd Walker

/s/ David B. Smith
David B. Smith, Esquire
SMITH KANE HOLMAN, LLC
112 Moores Road, Suite 300
Malvern, PA 19355
Tel: (610) 407-7217
Fax: (610) 407-7218
dsmith@skhlaw.com
Counsel to the Debtor

Official Form 425A                                                                                                                                    page 18